UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NTCH-WA, INC.,<br><br>                    Plaintiff,<br><br>    v.<br><br>ZTE CORP.,<br><br>                    Defendant. | NO:  12-CV-3110-TOR<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISIDICTION AND FOR FAILURE TO STATE A CLAIM |

BEFORE THE COURT is Defendant's Motion to Dismiss (ECF No. 103). This matter was heard with telephonic oral argument on February 26, 2014. Shannon Gallagher, Lisa J. Dickinson and Lisa M. Sofio appeared on behalf of the Plaintiff.  Laura E. Besvinick and Michael J. Kapaun appeared on behalf of Defendant.  The Court has reviewed the briefing and the record and files herein, and is fully informed.

//

//

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 1

BACKGROUND

Defendant ZTE Corp. moves to dismiss Plaintiff's Amended Complaint for lack of personal jurisdiction and for failure to state a claim.  For the reasons discussed below, the Court concludes that personal jurisdiction over Defendant has been properly established and that each of Plaintiff's claims states a claim upon which relief can be granted.

FACTS[1]

Plaintiff NTCH-WA, Inc., is a Washington corporation that maintains its principal place of business in Yakima, Washington.  Plaintiff is one of a number of affiliated companies that does business under the trade name ClearTalk.  Among other ventures, Plaintiff and its affiliates sell wireless telecommunications services.

Defendant ZTE Corp. is a corporation organized under the laws of the People's Republic of China and maintains its principal place of business in Shenzhen, China.  Defendant manufactures and supplies telecommunications equipment, hardware, software licenses and related support services.  Defendant

---

[1] The facts in this section are drawn principally from Plaintiff's Amended Complaint and the materials attached thereto and are accepted as true for purposes of the instant motion.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 2

sells its products in the United States through its wholly-owned subsidiary, ZTE USA.

In September 2006, one of Plaintiff's ClearTalk affiliates in Florida ("PTA-FLA") purchased equipment manufactured by Defendant through ZTE USA.  This equipment was to be used to build a cellular telephone network in Jacksonville, Florida.  Among the equipment PTA-FLA purchased was a primary switch[2] and various "modules" designed to provide MMS data messaging capability.

After the equipment was delivered, PTA-FLA discovered that it would not support several government-mandated services such as local number portability and E-911 emergency assistance.  PTA-FLA also discovered that the equipment could not provide the promised MMS data messaging capability.  PTA-FLA worked with ZTE USA to resolve the issues, but was ultimately unsuccessful.

In an effort to mitigate their damages, PTA-FLA, ZTE USA and Defendant negotiated an agreement to repurpose some of the equipment for use in other markets by other ClearTalk entities.  This agreement called for the primary switch originally sold to PTA-FLA to serve as the hub of a network that would be located in Jackson, Tennessee and used by ClearTalk affiliate NTCH-WEST TENN, INC.

---

[2] A primary switch is the core of a telecommunications network which routes calls from the caller to another caller on the same network or to a different network.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 3

1    The agreement also called for Plaintiff to build a spoke of the network in Yakima,

2    Washington that would connect remotely to the primary switch in Tennessee.

3    Under this network configuration, Plaintiff's portion of the network in Washington

4    would only function if the primary switch in Tennessee was functioning properly.

5          During the course of these negotiations, Plaintiff sought reassurances from

6    Defendant that it could resolve the outstanding issues with the primary switch and

7    render the Tennessee network hub operational in a timely manner.  Defendant,

8    through several persons acting on its behalf, promised Plaintiff that the hub would

9    be operational before Plaintiff's contemplated launch date.  Accordingly, Plaintiff

10   moved forward with plans to build out its portion of the network in Washington.

11         The implementation of the network hub in Tennessee did not go smoothly.

12   After ZTE USA was unable to make the equipment work properly, Defendant sent

13   an engineer from China to address the lingering problems.  This engineer assured

14   Plaintiff that the problems could be fixed and that the primary switch would be

15   operational in time for Plaintiff's launch.  In reliance upon those assurances,

16   Plaintiff purchased additional equipment which it needed to build out its portion of

17   the network.  This equipment included a remote switch which Plaintiff purchased

18   from ZTE USA, and forty base stations which Plaintiff acquired by way of an

19   addendum to a separate contract between Defendant, ZTE USA and Daredevil,

20   Inc., a ClearTalk affiliate located in Missouri.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 4

Ultimately, Defendant's engineer was unable to render the primary switch operational.  Consequently, Plaintiff's network could not be launched.  Further complicating matters, Plaintiff could not complete its portion of the network build out because it received "incomplete" base stations from Defendant.

Plaintiff filed the instant lawsuit to recover damages caused by the botched network launch.  Plaintiff has asserted separate claims against ZTE USA which are currently being litigated in binding arbitration.  Defendant is not a party to the arbitration proceedings.

DISCUSSION

**A. Personal Jurisdiction**

A motion to dismiss for lack of personal jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(2).  In opposing such a motion, the plaintiff bears the burden of establishing that jurisdiction is proper.  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2008).  When the motion is "based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss."  *Id.* (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010)).  To satisfy this standard, a plaintiff "need only demonstrate facts that[,] if true[,] would support jurisdiction over the defendant."  *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003)

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 5

(quotation and citation omitted).  In determining whether a plaintiff has made the requisite showing, a court must accept all uncontroverted allegations in the complaint as true and resolve any factual disputes in the plaintiff's favor.  *Id.*

The term personal jurisdiction refers to a court's power to render a valid and enforceable judgment against a particular defendant.  *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980).  The exercise of this power is limited by the Due Process Clause of the Fourteenth Amendment.  In general, due process requires that a non-resident defendant have sufficient "minimum contacts" with the forum state such that requiring the defendant to defend in that forum would comport with traditional notions of fair play and substantial justice.  *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945).

Personal jurisdiction over a non-resident defendant may take one of two forms: general jurisdiction or specific jurisdiction.  *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).  Here, Plaintiff has attempted to establish specific jurisdiction.  The following three-part analysis controls:

> (1) The non-resident defendant must *purposefully direct his activities* or consummate some transaction with the forum or resident thereof; or perform some act by which he *purposefully avails himself* of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

1      (3) the exercise of jurisdiction must comport with fair play and
       substantial justice, i.e., it must be reasonable.

2

3    *Mavrix Photo*, 647 F.3d at 1228-29 (9th Cir. 2011) (emphasis in original)

4    (quotation and citations omitted).  The plaintiff bears the burden of establishing

5    that the first two prongs have been satisfied.  *CollegeSource, Inc. v. AcademyOne,*

6    *Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011).  If the plaintiff is successful, the burden

7    shifts to the defendant "to set forth a 'compelling case' that the exercise of

8    jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v.*

9    *Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

10         The first prong of the specific jurisdiction test may be satisfied by either

11   "purposeful direction" of the defendant's activities toward the forum state or

12   "purposeful availment" of the forum state's laws.  *Yahoo! Inc. v. La Ligue Contre*

13   *La Racisme et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc).

14   These are two distinct concepts, and courts must be careful to apply the correct test

15   based upon the type of claim(s) being asserted.  *In re W. States Wholesale Natural*

16   *Gas Antitrust Litig.*, 715 F.3d 716, 743 (9th Cir. 2013).  In tort cases, courts

17   typically inquire "whether a defendant 'purposefully direct[ed] his activities' at the

18   forum state[.]" *Yahoo! Inc.*, 433 F.3d at 1206 (citation omitted).  In contract cases,

19   by contrast, courts typically ask "whether a defendant 'purposefully avail[ed] itself

20

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 7

of the privilege of conducting activities' or 'consummate[d] a transaction' in the forum, focusing on activities such as delivering goods or executing a contract." *Id.*

Plaintiff has asserted claims sounding in both contract and tort. These claims would support both a "purposeful availment" and "purposeful direction" analysis. Because both parties have focused exclusively on purposeful direction, however, the Court will limit its analysis to whether Defendant purposefully directed its activities toward Washington.

In deciding whether purposeful direction occurred, courts apply an "effects test" derived from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984). This test "focuses on the forum in which the defendant's actions were felt," regardless of whether the actions occurred within the forum. *Yahoo! Inc.*, 433 F.3d at 1206. To satisfy the effects test, the plaintiff must demonstrate that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Mavrix Photo*, 647 F.3d at 1228 (quotation and citation omitted).

Defendant asserts that personal jurisdiction is lacking because Plaintiff abandoned the so-called "Purchase Order" claim upon which the Court's prior personal jurisdiction ruling relied. ECF No. 103 at 7-9. At Plaintiff's invitation, the Court has compared the allegations asserted in the original Complaint to those in the Amended Complaint. It is not clear from the face of either document that

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 8

1   the purchase order referenced in and attached to the original Complaint is for the

2   same equipment and/or services referenced in paragraphs 12, 20, 21, 31, 33, 41,

3   67, 75 and 82 of the Amended Complaint.  In light of this uncertainty, the Court

4   will err on the side of caution and revisit the specific jurisdiction analysis anew

5   based upon the allegations in the Amended Complaint.

6         The Court concludes that personal jurisdiction has been properly established.

7   The Amended Complaint alleges that Defendant negotiated with Plaintiff and other

8   ClearTalk affiliates to repurpose defective or malfunctioning telecommunications

9   equipment for use in a network that would provide service to, *inter alia*, Plaintiff's

10  customers in Washington.  Pl.'s Am. Compl., ECF No. 93, at ¶¶ 19-20.  According

11  to Plaintiff, Defendant was directly involved in these negotiations and was aware

12  that the new network would extend to Washington.  Pl.'s Am. Compl., ECF No.

13  93, at ¶¶ 22-24.  Plaintiff further alleges that Defendant (or persons acting on its

14  behalf) affirmatively represented that the equipment in question (the primary

15  switch located in Jackson, Tennessee) could be fixed in time to accommodate

16  Plaintiff's anticipated launch date.  Pl.'s Am. Compl., ECF No. 93, at ¶¶ 25-30.  In

17  reliance upon these representations, Plaintiff proceeded to build out its portion of

18  the network.  Pl.'s Am. Compl., ECF No. 93, at ¶¶ 31-34.  During this process,

19  Plaintiff arranged to acquire forty (40) base stations manufactured by Defendant

20  which were needed to complete Plaintiff's portion of the network build-out:

[I]n order to facilitate the Washington build-out, one of the other ClearTalk entities ("Daredevil, Inc.") entered into an agreement whereby ZTE Corp. would ship 40 base stations originally intended for another market (St. Louis) to Yakima for use in the Washington market.

*   *   *

ZTE and Daredevil intended Plaintiff to be a third party beneficiary of the Addendum and, indeed, drafted the Addendum with Plaintiff's needs for the Yakima base stations in mind.

Pl.'s Am. Compl., ECF No. 93, at ¶¶ 35, 37.  Plaintiff alleges that Defendant breached this agreement by shipping "incomplete" base stations to Yakima.  Pl.s Am. Compl., ECF No. 93, at ¶¶ 41, 43, 53.  Plaintiff further asserts that it was forced to abandon its network build-out after Defendant was unable to repair the primary switch in Tennessee as promised.  Pl.'s Am. Compl., ECF No. 93, at ¶¶ 39-40.

The above allegations reflect purposeful direction of Defendant's activities toward Washington.  Accepted as true, these allegations establish that Defendant (1) entered into an agreement to repurpose its allegedly defective equipment for use in a network that would extend to the State of Washington; (2) affirmatively represented to Plaintiff, a Washington corporation, that the equipment would be fixed in time to accommodate Plaintiff's anticipated launch date; and (3) agreed to ship—and did in fact ship—additional equipment needed to complete Plaintiff's portion of the network build-out to Washington.  These were intentional acts that

1    were "expressly aimed" at Washington and which resulted in harm that Defendant

2    knew was likely to be suffered in Washington. *Mavrix Photo*, 647 F.3d at 1228.

3    Accordingly, all three elements of the effects test are satisfied. As the remaining

4    two elements of the three-part specific jurisdiction test are not contested, the Court

5    finds that personal jurisdiction over Defendant has been properly established.

6    **B. Failure to State a Claim**

7        A motion to dismiss for failure to state a claim tests the legal sufficiency of

8    the plaintiff's claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To

9    withstand dismissal, a complaint must contain "enough facts to state a claim to

10   relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

11   (2007). "Naked assertion[s]," "labels and conclusions," or "formulaic recitation[s]

12   of the elements of a cause of action will not do." *Id.* at 555, 557. "A claim has

13   facial plausibility when the plaintiff pleads factual content that allows the court to

14   draw the reasonable inference that the defendant is liable for the misconduct

15   alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a plaintiff need not

16   establish a probability of success on the merits, he or she must demonstrate "more

17   than a sheer possibility that a defendant has acted unlawfully." *Id.*

18       A complaint must also contain a "short and plain statement of the claim

19   showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This

20   standard "does not require detailed factual allegations, but it demands more than an

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 11

1  unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at

2  678 (quoting *Twombly*, 550 U.S. at 555).  In assessing whether Rule 8(a)(2) has

3  been satisfied, a court must first identify the elements of the plaintiff's claim(s) and

4  then determine whether those elements could be proven on the facts pled.  The

5  court should generally draw all reasonable inferences in the plaintiff's favor, *see*

6  *Sheppard v. David Evans and Assocs.*, 694 F.3d 1045, 1051 (9th Cir. 2012), but it

7  need not accept "naked assertions devoid of further factual enhancement." *Iqbal*,

8  556 U.S. at 678 (internal quotations and citation omitted).

9       Federal Rule of Civil Procedure 9(b) governs the pleading of allegations

10  involving fraud or mistake.  In contrast to the more lenient standard set forth in

11  Rule 8(a)(2), Rule (9)(b) requires that a party "state with particularity the

12  circumstances constituting fraud or mistake" in his or her complaint.  To satisfy

13  this standard, the allegations of fraud must "be specific enough to give defendants

14  notice of the particular misconduct so that they can defend against the charge and

15  not just deny that they have done anything wrong." *Vess v. CibaGeigy Corp. USA*,

16  317 F.3d 1097, 1106 (9th Cir. 2003) (quotation and citation omitted).  Thus,

17  "[a]verments of fraud must be accompanied by the who, what, when, where, and

18  how of the misconduct charged." *Id.* (quotation and citation omitted).  A party

19  may, however, plead allegations of "[m]alice, intent, knowledge, and other

20  conditions of a person's mind" more generally. Fed. R. Civ. P. 9(b).

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 12

In ruling upon a motion to dismiss, a court must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the party opposing the motion. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The court may disregard allegations that are contradicted by matters properly subject to judicial notice or by exhibit. *Id.* The court may also disregard conclusory allegations and arguments which are not supported by reasonable deductions and inferences. *Id.*

The Ninth Circuit has repeatedly instructed district courts to "grant leave to amend even if no request to amend the pleading was made, unless ... the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). The standard for granting leave to amend is generous—the court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In determining whether leave to amend is appropriate, a court must consider the following five factors: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint. *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011).

### 1. Collective References to "ZTE"

Defendant argues that the Amended Complaint must be dismissed because it improperly "lumps together" Defendant ZTE Corp. and Defendant's non-party

1    subsidiary, ZTE USA.  ECF No. 103 at 12-15.  The thrust of this argument is that

2    Plaintiff should not be permitted to refer to these two entities collectively as "ZTE"

3    given that Plaintiff and ZTE USA are presently litigating factually related claims in

4    separate arbitration proceedings.  "Unless [P]laintiff is required to distinguish

5    clearly between ZTE Corp. and ZTE USA," Defendant argues, "it will be virtually

6    impossible for the parties, and this Court, to determine what, if any, claims remain

7    to be litigated following the arbitration result."  ECF No. 103 at 14.

8          The Court agrees that the Amended Complaint's references to ZTE Corp.

9    and ZTE USA collectively as "ZTE" are somewhat problematic.  One of the

10   central issues in this case is whether Plaintiff's claims against ZTE Corp. arise

11   independently of its claims against ZTE USA in arbitration.  Plaintiff maintains

12   that ZTE Corp. committed separate wrongs that give rise to separate liability.

13   Nevertheless, Plaintiff has occasionally grouped ZTE Corp. and ZTE USA

14   together in asserting its claims.  For example, Plaintiff alleges:

15          39. Despite **ZTE's** promises, it was unable to make the primary
            switch located in Jackson, Tennessee functional. Plaintiff and its
16          affiliates worked tirelessly to attempt to resolve the issue, but to no
            avail. As explained above, the Chinese engineers ZTE Corp. sent to
17          attempt to fix the equipment were unable to remedy the problems
            within any time frame that was reasonable or workable. Even when
18          Plaintiff's Tennessee affiliate, NTCH-WEST TENN, INC., engaged
            third-party entities to specifically identify problems, the ZTE Corp.
19          engineers failed to implement, or were prevented from implementing,
            the proposed solutions. In addition to other significant problems, the
20          Chinese engineers' inability to fix the MMS and OTAF functions
            were critically disruptive to Plaintiff's planned operations.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 14

40. Ultimately, **ZTE** admitted that the Florida Equipment, now located in Jackson, Tennessee, and critical to the functioning of the remote Washington network, was not intended for commercial use, had never been tested in the United States, and was merely a platform for experimentation in the United States market. Without an operable primary switch in Jackson, Plaintiff could not realize its Yakima deployment plan.

41. Even if **ZTE** had been able to adequately repair the Jackson network, **ZTE's** failure to deliver complete base stations made deployment impossible. Specifically, of the 40 base stations allocated to Washington pursuant to the Addendum, **ZTE** did not deliver any complete units and, instead, shipped only partial components.

42. Plaintiff is informed and believes and thereon alleges that **ZTE** hoped Plaintiff would begin its deployment and sink sufficient resources into the development of the network before realizing the deficiency, thus placing **ZTE** in a position to extract further concessions from Plaintiff.

43. Indeed, when Plaintiff's South Carolina ClearTalk affiliate, which was also allocated base stations pursuant to the Addendum, informed **ZTE** that its base station shipment was incomplete, **ZTE** abruptly reversed course and stated it would not be shipping any further base stations to either Washington or South Carolina and that, the Addendum notwithstanding, it had shipped all that it felt it owed to the ClearTalk entities.

Pl.'s Am. Compl., ECF No. 93, at ¶¶ 39-43 (emphasis added).  These references to "ZTE" are ambiguous in that they do not allow the reader to determine whether the actions in question were taken by ZTE Corp., ZTE USA, or both.

Nevertheless, the Court concludes that dismissal is not warranted.  Despite the ambiguity created by Plaintiff's occasional references to "ZTE," the remaining allegations are "specific enough to give [Defendant ZTE Corp.] notice of the

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 15

1    particular misconduct so that [it] can defend against the charge[s] and not just deny

2    that [it has] done anything wrong." *Vess*, 317 F.3d at 1106.  If Defendant believes

3    that these ambiguities preclude it from asserting a meritorious defense such as res

4    judicata (claim preclusion) or collateral estoppel (issue preclusion), its remedy is to

5    file a motion for a more definite statement pursuant to Rule 12(e).  *See* Charles A.

6    Wright, et al., 5B *Federal Practice & Procedure* § 1356 (December 2013 database

7    update) ("The Rule 12(b)(6) motion addresses itself solely to the question of

8    whether the complaint fails to state a claim . . . If the complaint is ambiguous or

9    does not contain sufficient information to allow a responsive pleading to be

10    framed, a motion under Rule 12(b)(6) is not appropriate; the proper remedy is a

11    motion for a more definite statement under Rule 12(e).").  Plaintiff has pled its

12    claims with sufficient particularity to satisfy Rules 8(a)(2) and 9(b); accordingly,

13    there is no basis for dismissal under Rule 12(b)(6).

14         2.  Fraud and Negligent Misrepresentation Claims

15         Defendant contends that Plaintiff's fraud and negligent misrepresentation

16    claims fail to satisfy Rule 9(b)'s heightened pleading requirement.  ECF No. 103 at

17    15-16.  The Court respectfully disagrees.  As noted above, the allegations in the

18    Amended Complaint provide Defendant with adequate notice of the factual bases

19    for Plaintiff's fraud and negligent misrepresentation claims.  The Amended

20    Complaint specifically alleges that Defendant "inserted itself" into negotiations

between ZTE USA and several ClearTalk entities (including Plaintiff) to repurpose an allegedly defective primary switch originally sold to PTA-FLA.  Pl.'s Am. Compl., ECF No. 93, at ¶¶ 19-22.  During these negotiations, Defendant affirmatively misrepresented its ability to fix the problems with the primary switch. Pl.'s Am. Compl., ECF No. 93, at ¶¶ 23-28, 67.  Even after it became apparent to Defendant that the switch could not be rendered functional for its intended purpose, Defendant continued to make false misrepresentations and fraudulently induced Plaintiff to purchase additional equipment.  Pl.'s Am. Compl., ECF No. 93, at ¶¶ 29-32, 71.  The Court finds that these allegations are sufficiently particular to put Defendant on notice of the factual bases for Plaintiff's fraud and misrepresentation claims.

   3.  <u>Breach of Contract Claim</u>

      Defendant moves for dismissal of Plaintiff's breach of contract claim, arguing that Plaintiff has not plausibly alleged (1) that ZTE Corp. was a party to the contract Addendum negotiated between Daredevil, Inc. and ZTE USA; or (2) that Plaintiff was an intended beneficiary of the Addendum.  ECF No. 103 at 16-18.  This argument is without merit.  The Amended Complaint specifically alleges that ZTE Corp.—rather than ZTE USA—was obligated to ship the 40 base stations in question.  Pl.'s Am. Compl., ECF No. 93, at ¶ 35.  It further alleges that ZTE Corp.'s Executive Vice President for North America, Zhu Jinyun, "reviewed and

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 17

approved the Addendum before it was executed." Pl.'s Am. Compl., ECF No. 93,

at ¶¶ 35, 38. These allegations plausibly establish that Defendant was indeed a

party to the Addendum. Similarly, the Amended Complaint alleges that "ZTE and

Daredevil intended Plaintiff to be a third party beneficiary of the Addendum and,

indeed, drafted the Addendum with Plaintiff's needs for the Yakima base stations

in mind." Pl.'s Am. Compl., ECF No. 93, at ¶ 37. The Court must accept this

allegation as true at the pleading stage. *Sprewell*, 266 F.3d at 988. Accordingly,

Defendant's motion to dismiss Plaintiff's breach of contract claim is denied.

### 4. Tortious Interference With Contract Claim

Defendant argues that Plaintiff's tortious interference with contract claim

fails as a matter of law because a corporate parent cannot be liable for interfering

with the affairs of its subsidiary where the entities' economic interests are aligned.

ECF No. 103 at 18 (citing *Hansen v. Transworld Wireless TV-Spokane, Inc.*, 111

Wash. App. 361 (2002)). This argument has been raised prematurely. As Plaintiff

correctly notes, whether ZTE Corp.'s and ZTE USA's economic interests were

aligned is a question of fact which is not susceptible to resolution on a motion to

dismiss. *See Hansen*, 111 Wash. App. at 373 (affirming dismissal of tortious

interference with contract claim where no evidence of divergent financial interests

had been presented on summary judgment). Defendant's motion to dismiss is

denied as to this claim.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 18

5.  <u>Promissory Estoppel Claim</u>

Finally, Defendant contends that Plaintiff's promissory estoppel claim is inadequately supported by the allegations in the Amended Complaint.  ECF No. 103 at 19.  Here again, the Court respectfully disagrees.  There are five elements to a promissory estoppel claim in Washington: (1) a promise which (2) the promisor should reasonably expect to cause the promisee to change his position and (3) which does cause the promisee to change his position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise.  *Havens v. C & D Plastics, Inc.*, 124 Wash.2d 158, 171-72 (1994); *accord BancorpSouth Bank v. Paramount Properties, LLC*, 349 S.W.3d 363, 366 (Mo. App. 2011) ("A claim of promissory estoppel contains four elements: (1) a promise; (2) on which a party relies to his or her detriment; (3) in a way the promisor expected or should have expected; and (4) resulting in an injustice that only enforcement of the promise could cure.").  Each element has been adequately pled.  Plaintiff alleges that Defendant promised to fix the primary switch in Tennessee and later promised to ship 40 complete base stations.  Plaintiff further alleges that it justifiably relied upon these promises to its detriment and that Defendant should reasonably have expected it to do so.  Given that this claim has been pled in the alternative to Plaintiff's breach of contract claim, the fifth and final element (enforcement of the promise to avoid injustice) is also satisfied; in

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 19

the event that Plaintiff cannot prove the existence of an enforceable contract, it may seek to avoid injustice by holding Defendant to its promises.

**IT IS HEREBY ORDERED:**

Defendant's Motion to Dismiss (ECF No. 103) is **DENIED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** February 27, 2014.



THOMAS O. RICE
United States District Judge

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 20