UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NTCH-WA, INC.,<br><br>                   Plaintiff,<br><br>     v.<br><br>ZTE CORPORATION,<br><br>                   Defendant. | NO: 2:12-CV-3110-TOR<br><br>ORDER ON DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND TO EXCLUDE EXPERT TESTIMONY |

BEFORE THE COURT are Defendant's Motion for Final Summary Judgment (ECF No. 218), Motion for Final Summary Judgment on Additional Grounds (ECF No. 233), and Motions to Exclude Expert Testimony (ECF Nos. 231; 232; 236; 237; 239). A telephonic hearing was held on July 29, 2015. ECF No. 270. The Court has reviewed the completed briefing and the record and files herein, heard from counsel, and is fully informed.

//

//

# BACKGROUND

Plaintiff filed a complaint on August 24, 2012, alleging causes of action against Defendant and certain unidentified parties. ECF No. 1. These claims arose from the sale of allegedly faulty switching equipment necessary for the operation of cellular phone networks. In January 2013, the Court temporarily stayed these proceedings to allow for the completion of an arbitration process in Florida. ECF No. 55. That stay was extended in July 2013 as the arbitration proceedings had not yet concluded. ECF No. 71.

Plaintiff filed an amended complaint on December 10, 2013, alleging causes of action against Defendant only. ECF No. 93. Defendant filed a motion to dismiss the amended complaint on January 6, 2014, which the Court denied on February 27, 2014. ECF Nos. 103; 124.

The Court granted Plaintiff leave to file a second amended complaint on October 23, 2014. ECF No. 198. Plaintiff filed its Second Amended Complaint on November 10, 2014. ECF No. 203. In its Second Amended Complaint, Plaintiff alleges six causes of action: breach of contract, tortious interference with contract, fraudulent misrepresentation, negligent misrepresentation, promissory estoppel, and unjust enrichment. *Id.* at ¶¶ 68–117.

A final arbitration award was issued on February 11, 2014. ECF No. 207-1. On December 18, 2014, Defendant provided the Court with notice that NTCH-WA

had been joined in a case before the United States District Court for the Middle District of Florida, *PTA-FLA, Inc. v. ZTE USA, Inc.*, No. 3:11-CV-0510. ECF No. 205. The Florida District Court order indicated that the court was exercising jurisdiction over confirmation of the final arbitration award under the Federal Arbitration Act ("FAA"). ECF No. 205-1. The Florida District Court undertook to "determine in one action whether the arbitration award should be confirmed vis-à-vis all arbitration participants." *Id.* at 11–12. Briefing was scheduled to be completed by February 2015. *Id.* at 13.

In the meantime, the Court ordered the parties to brief the preclusive effect the final arbitration award may have upon the matter before this Court. ECF No. 212. The Court further ordered the parties to prepare all other dispositive and *Daubert* motions by the deadline established in the amended scheduling order (ECF No. 173). *Id.* at 6.

Defendant filed a Motion for Final Summary Judgment on June 12, 2015, arguing the Florida arbitration proceedings precluded Plaintiff's claims in this matter. ECF No. 218. Defendant filed a subsequent Motion for Final Summary Judgment on Additional Grounds on June 29, 2015, arguing for judgment on the underlying claims regardless of the preclusive effect of the arbitration proceedings. ECF No. 233. Defendant also filed motions to exclude the expert testimony of five proffered expert witnesses. ECF Nos. 231 (Adilia Aguilar); 232 (Anthony

Sabatino); 236 (Keven Beierschmitt); 237 (John A. Goocher); and 239 (Glenn Ishihara). Plaintiff opposed each motion. The parties completed their briefing on these matters and a telephonic hearing was held on July 29, 2015. ECF No. 270.

Subsequent to this hearing, the Court was informed that resolution of the Florida District Court litigation would be delayed until October 2015 at the earliest. ECF Nos. 274; 274-1. In light of the dispositive effect confirmation of the arbitration award bears upon this matter and the delayed resolution of that issue, the Court ordered on August 11, 2015, that the scheduled trial and all remaining deadlines be vacated and the case stayed pending resolution of the Florida litigation. ECF No. 275.

The Florida Court issued an Order Confirming the Award on October 6, 2015. ECF No. 287 at 3. The Order was affirmed on appeal to the Eleventh Circuit on December 15, 2016. ECF No. 287 at 3. The Court lifted the stay (ECF No. 285) on June 27, 2017 and now issues this order on the pending motions.

//

//

//

//

//

//

**FACTS**[1]

This matter arises from a long, complicated, and ultimately unproductive

business relationship between affiliated start-up cellular telephone network

companies owned and operated by Eric Steinmann, Defendant ZTE Corporation (a

cellular telephone equipment manufacturer in China), and ZTE-USA, Inc. ("ZTE-

USA")—Defendant's wholly-owned subsidiary doing business in the United

States.  *See* ECF Nos. 207-1 at 2, 203 at ¶¶ 2; 204 ¶ 2.  The companies owned and

---

[1]    Where appropriate, the Court incorporates the findings of fact necessarily

made by the arbitrator in the final arbitration award.  *Allen v. McCurry*, 449 U.S.

90, 94, (1980) ("Under [issue preclusion], once a court has decided an issue of fact

or law necessary to its judgment, that decision may preclude relitigation of the

issue in a suit on a different cause of action involving a party to the first case.");

*see also Masson v. New Yorker Magazine, Inc.*, 85 F.3d 1394, 1400 (9th Cir. 1996)

("Defensive [issue preclusion] applies 'when a defendant seeks to prevent a

plaintiff from asserting a claim the plaintiff has previously litigated and lost against

another defendant.'") (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326

n.4 (1979)); *Greater Los Angeles Council on Deafness, Inc. v. Baldrige*, 827 F.2d

1353, 1360 (9th Cir. 1987) ("Issue preclusion bars the relitigation of all issues that

were litigated in a prior proceeding, even if the second proceeding is an action on a

claim different from the one asserted in the first action.").

operated by Eric Steinmann were Daredevil, Inc., a Missouri corporation; PTA-FLA, Inc., a Florida corporation; NTCH-WEST TENN, Inc., a Tennessee corporation; and Plaintiff NTCH-WA, Inc., a Washington corporation. ECF Nos. 207-1 at 2. These companies collectively operated under the brand name "ClearTalk" (the "ClearTalk entities"). ECF Nos. 207-1 at 2.

In 2006, PTA-FLA, Inc. entered into a master service agreement with ZTE USA for the purchase of cellular telephone network equipment (the "Florida MSA"). ECF Nos. 203 at ¶ 13; 204 at ¶ 13; 207-1 at 3; 219-5, 219-6, 219-7, 219-8, 219-9. For reasons not relevant to this proceeding, PTA-FLA, Inc., ultimately sold its cellular network in 2008 and removed the equipment purchased from ZTE USA. ECF Nos. 203 at ¶ 18; 204 at ¶ 18; 207-1 at 12. Relevant to this matter are the facts that (1) part of PTA-FLA, Inc.'s purchase included a master switch through which all voice and data traffic would be routed (the "core switch"), and (2) there were a number of technical issues with the core switch which precluded its full functionality. *See* 207-1 at 9–11; 261-2 at ¶ 13.

Steinmann intended to make use of the removed Florida equipment to develop cellular networks in other markets. ECF No. 261-2 at ¶¶ 42–43. As such, in July 2008, PTA-FLA, Inc., ordered two remote switches to be used to establish markets in Washington and Tennessee. ECF No. 261-2 at ¶¶ 42, 87. These remote switches would allow those networks to connect to the core switch in Florida

which would provide voice and data service. ECF No. 261-2 at ¶ 43. Eventually, the core switch was moved from Florida to Jackson, Tennessee. ECF No. 261-2 at ¶ 53. In the first half of 2008, Plaintiff began acquiring and preparing buildings and towers for installation of the planned Washington cellular network. ECF No. 261-2 at ¶ 89. In the summer of 2008, Plaintiff shipped the decommissioned base stations from Florida to Washington. ECF No. 261-2 at ¶ 90.

On September 25, 2008, Daredevil, Inc., entered a master supply agreement ("Missouri MSA") for the purchase of additional cellular telephone equipment for use in Missouri. ECF Nos. 207-1 at 3; 203 at ¶ 20; 204 at ¶ 20; 235 at ¶ 1.[2] The Missouri MSA was executed after individuals representing ZTE USA[3] visited Steinmann at his home and pleaded with him to purchase equipment manufactured by Defendant rather than that manufactured by a competing Chinese manufacturer. ECF Nos. 207-1 at 3–4, 13; 261-2 at ¶ 52. The MSA indicates it is entered into

---

[2]    Where appropriate, the Court refers to factual statements Defendant makes in its Rule 56.1 statements of fact which Plaintiff does not dispute. *See* ECF Nos. 219; 235; 246 (enumerating disputes to factual statements in ECF No. 219); 261 (enumerating disputes to factual statements in ECF No. 219).

[3]    Plaintiff contends these individuals also represented Defendant. *See, e.g.*, ECF No. 261 at ¶ II.1. This dispute is ultimately immaterial to the resolution of this case given the preclusive nature of the arbitration decision.

between ZTE USA, Inc., and Daredevil, Inc., and is signed by Joey Jia as "General Manager" for "ZTE USA, Inc." and by Steinmann as "Development Manager" for "Daredevil, Inc. dba ClearTalk."  ECF No. 235-1 at 2, 16.

On the same day, September 25, 2008, Steinmann and Jia also executed a second document simply entitled, "Agreement."  ECF Nos. 235 at ¶ 4; 261 at ¶ I.2.  The Agreement is signed by Steinmann as "Development Manager" for "Daredevil, Inc." and by Joey Jia as "General Manager" for "ZTE Inc."  ECF No. 235-2 at 6.[4]  The Agreement incorporated the terms of the Missouri MSA, but also laid out other specific provisions, including that "ZTE be the primary supplier of handsets to the operation of Daredevil in Saint Louis and to the other affiliated operations of Daredevil and NTCH . . . .  In this regard and for a period of 5 years from this date ZTE agrees to these entities to match the cost of any other handsets being sold and available to the parties based on comparable features . . . ."  *Id.* at 5.

---

[4]     The parties dispute whether Defendant was a party to the Agreement. Plaintiff contends that the agreement was entered into only with the authorization of Defendant and that Steinmann was under the impression that "ZTE Inc." meant "ZTE Corp."  ECF No. 261 at ¶ I.2.  Defendant contends it was not a party to the Agreement.  As the Court will discuss, this dispute is not material to resolution of the issues in this case given the preclusive effect of the arbitrator's award.

A separate, undated page in the same exhibit is signed by Steinmann on behalf of "PTA-Fla, Inc." and by Jia on behalf of "ZTE USA, Inc." ECF No. 235-2 at 7.

Deployment of the Missouri network was time-sensitive because a rival company was also developing cellular infrastructure in the same market. ECF No. 261-2 at ¶¶ 49–50. As such, Steinmann agreed in the fall of 2008 that Daredevil would take delivery of the remote switch destined for the Washington network. ECF No. 261-2 at ¶¶ 58, 91. Without a remote switch, the Washington network could not operate and the base stations originally shipped from Florida were again redeployed, this time to Tennessee. ECF No. 261-2 at ¶¶ 87–93.

Eventually, Daredevil sold its Missouri network to the rival company. ECF Nos. 207-1 at 13; 261-2 at ¶ 65. In April 2009, Daredevil began to decommission and remove its equipment. ECF No. 261-2 at ¶ 66.

In June 2009, Steinman began to revive the deployment of a network in Washington and expressed a willingness to redeploy certain equipment from the Missouri network to other markets, including Washington. ECF Nos. 207-1 at 14; 261-2 at ¶ 94. On September 9, 2009, Plaintiff received a remote switch. ECF No. 261-2 at ¶ 95. However, there were continued technical problems with the core switch in Tennessee, upon which the functionality of the remote switch depended. ECF No. 261-2 at ¶ 97–98.

Nevertheless, on December 17, 2009, Steinmann executed an "Addendum to Existing Agreement Between Daredevil and ZTE." ECF Nos. 235 at ¶ 7; 235-3. The Addendum is signed by Steinmann as "Business Development Manager" for "ClearTalk" and by Neil Kushner as "VP Sales, Division 1" for "ZTE USA, Inc." ECF No. 235-3 at 3.[5] Under the addendum, forty base stations originally ordered for the Missouri market would be redeployed to Yakima, Washington. *Id.* at 2. A number of base stations were sent to Washington, but the Washington network was never opened. ECF Nos. 207-1 at 14; 261-2 at ¶¶ 96, 100.

In 2011, a series of lawsuits were filed by the various ClearTalk entities. ECF No. 219 at ¶ 30. The ClearTalk entities sued ZTE USA—but not Defendant—in Florida, Missouri, South Carolina, and Tennessee. *Id.* Steinmann sued both ZTE USA and Defendant in California. *Id.* at ¶ 31. The parties to these lawsuits agreed to consolidated arbitration. *Id.* at 32. The ClearTalk entities, including Plaintiff, submitted a demand for arbitration against ZTE USA, Inc., in December 2011. ECF Nos. 219 at ¶ 33; 219-12 at 2.

---

[5] The Parties also dispute whether Defendant was a party to the Addendum. *See* ECF No. 261 at ¶ I.3. As with the Agreement, this dispute is not material to resolution of this matter.

The ClearTalk entities' first amended statement of claim filed with the arbitration demand asserted claims against both ZTE USA and Defendant related to transactions in Florida, Missouri, South Carolina, Tennessee, and Washington. ECF Nos. 219 at ¶ 33; 219-12 at 5–39.

Defendant objected to the scope of arbitration, opposing any claims asserted against it and contending that only ZTE USA—not Defendant—was party to any agreements with the ClearTalk entities. ECF Nos. 219 at ¶ 33; 219-13 at 3 ¶¶ 1–2, 5. After considering Defendant's objection, the arbitrator informed the parties by email that the scope of the arbitration would be limited to "all the claims, counterclaims, and defenses that exist or may arise between and among the parties subject to the jurisdiction of the courts in the lawsuits pending at the time of the agreement to arbitrate." ECF Nos. 219-15 at 2; 246-8 at 2. As such, the arbitrator concluded the only claims against Defendant to be heard in the arbitration would be those encompassed in Steinmann's California suit against both ZTE USA and Defendant. ECF Nos. 219-15 at 2; 246-8 at 2.

Following discovery, the ClearTalk entities submitted their final Statement of Claim on August 1, 2012. ECF No. 219 at ¶ 38; 219-16, -17, -18, -19. In total, the ClearTalk entities asserted thirty causes of action against ZTE USA. *See* 219-17 at ¶ 162 through 219-19 at ¶ 311. The claims asserted specifically by Plaintiff

were for breach of contract, fraud, and unjust enrichment.  ECF No. 219-18 at ¶¶ 200–219.

Prior to the arbitration hearing, the ClearTalk entities submitted two additional claim memorials.  *See* ECF Nos. 219-26; 219-27.  In their initial memorial, the ClearTalk entities reiterated each cause of action and provided the arbitrator with briefing on the law and argument on the facts.  ECF No. 219-26 at 45–91.  In the memorial, Plaintiff focused on only two particular claims:  fraud and breach of contract under the Florida MSA.  ECF No. 219-26 at 70–73.  In the reply memorial, the ClearTalk entities again briefed their allegations of breach of contract, rescission of contract, fraudulent inducement, and state deceptive and unfair trade practices acts, and further argue that the various contractual limitations on damages do not apply.  ECF No. 219-27 at 36–61.

An arbitration hearing was held in Jacksonville, Florida, over the course of twelve days in August and September 2013.  ECF Nos. 207-1 at 1–2; 219 at ¶ 76; 219-28 at 2–3.  Opening statements were given by the parties on August 19, 2013.  ECF No. 219-29.  The arbitrator heard ten days of live testimony as well as the testimony of several witnesses presented by video.  ECF No. 207-1 at 2; 219-28 at 3.  Overall, the arbitrator heard testimony from nearly thirty witnesses and reviewed "many hundreds of exhibits submitted for consideration."  ECF Nos. 207-1 at 3; 219-28 at 4.  Following the close of the presentation of evidence, the

parties submitted post-hearing briefing, and the arbitrator then heard a full day of final argument. ECF Nos. 207-1 at 2; 219-28 at 3; 219-31 (Claimants' Closing Submission).

The arbitrator issued a final award on February 11, 2014. ECF Nos. 207-1; 219 at ¶ 98; 219-28. The arbitrator denied all the ClearTalk entities' claims against ZTE USA. ECF Nos. 207-1 at 17; 219-28 at 18.[6]

## DISCUSSION

Summary judgment may be granted to a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of any genuine issues of

---

[6] The arbitrator's final award stated the ClearTalk entities shall take nothing under all claims against ZTE USA and "ZTE corporation, Inc., a company incorporate under the laws of the People's Republic of China." ECF No. 207-1 at 17. Upon Defendant's objection, the Arbitrator amended the award to remove this reference to Defendant. ECF No. 246-11 at 2–3. The final award, as amended, reads, "The ClearTalk entities shall take nothing from this action and the Respondent, ZTE (USA), Inc., a New Jersey corporation, owes nothing in regard to those claims." ECF No. 246-11 at 3.

material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific genuine issues of material fact which must be decided at trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. A dispute concerning any such fact is "genuine" only where the evidence is such that a reasonable factfinder could find in favor of the non-moving party. *Id.* at 248, 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). In ruling upon a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "[A] district court is not entitled to weigh the evidence and resolve disputed underlying factual issues." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). Only evidence which would be admissible at trial may be considered. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

Defendant asserts that all claims in this matter should be dismissed with prejudice "because all of the issues and claims asserted by [Plaintiff] in this action were previously litigated and decided adversely to [Plaintiff] in arbitration." ECF

No. 218 at 1.  Defendant asserts that Plaintiff's present claims are precluded under both the doctrines of claim preclusion and issue preclusion.  *Id.* at 5.

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'"  *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).[7]

> Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.  Issue preclusion, in contrast, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim.  By preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate, these two doctrines protect against the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions.

*Id.* (internal quotation marks and citations omitted) (brackets in original).  "The party asserting preclusion bears the burden of showing with clarity and certainty

---

[7] The Supreme Court has recognized that "[t]hese terms have replaced a more confusing lexicon.  Claim preclusion describes the rules formerly known as 'merger' and 'bar,' while issue preclusion encompasses the doctrines once known as 'collateral estoppel' and 'direct estoppel.'"  *Taylor*, 553 U.S. at 892 n.5.  As such, the Court uses the terms issue preclusion and claim preclusion rather than the former terms.

ORDER ON DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND TO EXCLUDE EXPERT TESTIMONY ~ 15

what was determined by the prior judgment." *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1321 (9th Cir. 1992).

To succeed in a motion for summary judgment on these matters, Defendant must present evidence to which there is no genuine dispute and which shows clearly and with certainty that the arbitration precludes claims or issues presented in the current litigation. Fed. R. Civ. P. 56; *Clark*, 966 F.2d at 1321. Plaintiff may defeat the motion by showing either that there are genuine disputes of material fact or that the undisputed facts do not warrant claim or issue preclusion. For the reasons discussed below the Court finds that the claims presented in the matter before the Court are precluded by the final arbitration award, and Defendant is therefore entitled to summary judgment.

"Under [claim preclusion], a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153 (1979). Three elements are required to establish claim preclusion: "(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1150 (9th Cir. 2011) (quoting *Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003)). The Court evaluates each element in turn.

//

## A. Final Judgment on the Merits

As a matter of federal law, a federal court order confirming an arbitration award has "the same force and effect" as a final judgment on the merits as entered by the federal court.  9 U.S.C. § 13.  An arbitration award so confirmed has preclusive effect.  *See Fidelity Fed. Bank, FSB v. Durga Ma Corp.*, 387 F.3d 1021, 1023 (9th Cir. 2004) ("A judgment confirming an arbitration award is treated similarly to any other federal judgment.") (citing 9 U.S.C. § 13); *Harvey v. O'Quinn*, 57 Fed. Appx. 754, 755 (9th Cir. 2003) ("Under the federal law of res judicata, a final judgment on the merits precludes the parties from relitigating issues that were or could have been raised in the prior action.  Under the Federal Arbitration Act, a judgment that results from court confirmation of an arbitration award has the same force and effect" as any other final judgment on the merits.") (internal quotation marks and citations omitted).

The Florida District Court confirmed the arbitration and the Eleventh Circuit affirmed the District Court's decision.  As such, the arbitration award is a final judgment on the merits for purpose of res judicata.

## B. Privity of Parties

"'Privity—for the purposes of applying [claim preclusion]—is a legal conclusion designating a person so identified with a party to former litigation that he represents precisely the same right in respect to the subject matter involved."

*F.T.C. v. Garvey*, 383 F.3d 891, 897 (9th Cir. 2004). Privity is "a flexible concept dependent on the particular relationship between the parties in each individual set of cases." *Tahoe-Sierra Preservation Council*, 322 F.3d at 1081–82. "Even when the parties are not identical, privity may exist if there is 'substantial identity' between parties, that is, when there is sufficient commonality of interest." *Id.* at 1081 (internal quotation marks omitted). A substantial identity between parties may be established for instance "where the nonparty had a significant interest and participated in the prior action" or "where the interests of the nonparty and party are so closely aligned as to be virtually representative." *Id.* at 1082 (internal quotation marks omitted) (quoting *In re Schimmels*, 127 F.3d 875, 1082 (9th Cir. 1997)). "Corporate affiliations may be relevant in determining whether two parties are in privity for purposes of issue or claim preclusion." *Nordhorn v. Ladish Co., Inc.*, 9 F.3d 1402, 1405 (9th Cir. 1993).

Here, it is undisputed that ZTE USA was a wholly-owned subsidiary of Defendant. Further, as alleged by Plaintiff at arbitration, Defendant exercised extensive control over ZTE USA, including authorizing which contracts ZTE USA could or could not enter into. *See, e.g.*, ECF No. 219-31 at 28 ("They paused the meeting to call China and confirm with the ZTE Corp. people that it was OK to agree to the deadlines Mr. Stenmann specified . . . Joey Jia signed for ZTE and ZTE, Inc., which Mr. Steinmann understood to be ZTE Corp., the parent company

in China.").  Such ownership and control can establish privity for purposes of claim and issue preclusion.  *See In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983).

Furthermore, it is clear from the arbitration proceedings that ZTE USA was so closely aligned with Defendant as to be "virtually representative."  *See Tahoe-Sierra Preservation Council*, 322 F.3d at 1082.  ZTE USA not only had to defend itself from allegations leveled specifically against it, but, as discussed fully below, from the ClearTalk entities' indiscriminate allegations conflating the roles, actions, and agents of both ZTE USA and Defendant.  The ClearTalk entities routinely asserted that actions were attributed to "Respondents" or to "ZTE," without specifying one ZTE entity from the other.  This continued through the end of the arbitration, long after the arbitrator limited the scope of the arbitration.

Finally, Defendant was in fact involved in the arbitration proceedings and was represented by the same counsel as represented ZTE USA.[8]  Defendant had a financial interest in the arbitration claims against its wholly-owned subsidiary, and because the ClearTalk entities alleged that both ZTE USA and Defendant were

---

[8]     While the arbitrator limited the claims against Defendant, the ClearTalk entities continued to assert claims directly against Defendant regarding conduct alleged to have harmed Steinmann directly, based upon his California lawsuit.

liable under certain contract claims.  Thus, Defendant "had a significant interest and participated in the prior action" sufficient to grant it privity for the purpose of issue and claim preclusion.  *See Tahoe-Sierra Preservation Council*, 322 F.3d at 1082.  In short, the Court concludes that ZTE USA "represent[ed] precisely the same right[s] in respect to the subject matter involved" in both the arbitration and

current lawsuit such that ZTE USA and Defendant are in privity for purposes of claim preclusion. *See Garvey*, 383 F.3d at 897.[9]

C. Identity of Claims and Full and Fair Opportunity to Litigate

Claim preclusion "bars all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties on the same cause of action." *Clark*, 966 F.2d at 1320. While a flexible analysis, the

---

[9] The Court is not persuaded by Plaintiff's allegation, citing *Garvey*, that Defendant is benefitting from gamesmanship. ECF No. 245 at 15. The matter before the Court is factually distinguishable from *Garvey* where the Ninth Circuit's holding was premised on the finding that "the defendants in the first action were not sufficiently connected to the Modern Interactive defendants to justify barring the FTC's claims against the Modern Interactive defendants." 383 F.3d at 897–98. In the particular circumstances of this case, ZTE USA and Defendant are sufficiently connected to justify claim preclusion. Moreover, while Plaintiff asserts that Defendant "actively avoided arbitration," ECF No. 245 at 12–14, the claims against Defendant which were not encompassed by the arbitration were not included simply because the ClearTalk entities failed to sue Defendant in the underlying civil litigation and thereby make it subject to the jurisdiction of the courts at the time the arbitration commenced. *See* ECF No. 219-15.

Ninth Circuit has identified four factors used to determine whether a previous

adjudication precludes specific causes of action:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Id.* The fourth factor is the most important. *Id.*[10] "Whether two events are part of

the same transaction or series depends on whether they are related to the same set

of facts and whether they could conveniently be tried together." *Mpoyo v. Litton

Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005) (quoting *Western Sys., Inc.

v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992)).

All the claims Plaintiff now asserts arise out of the same transactional

nucleus of fact from which the claims in arbitration arose. A thorough review of

---

[10]    As the Ninth Circuit has noted, "[t]he first factor, 'whether rights or interests

established in the prior judgment would be destroyed or impaired by prosecution of

the second action,' is unhelpful here because it begs the question. Resolution of

that factor depends only on our conclusion about res judicata." *Liquidators of

European Fed. Credit Bank*, 630 F.3d at 1152. As such, the Court's analysis

focuses on the other three factors.

the ClearTalk entities' briefing in the arbitration indicates they relied upon the same facts in pressing their claims in arbitration as Plaintiff relies upon in the current litigation.  *Compare* ECF Nos. 219-16, -17, -18, -19; 219-31; 219-26, 219-27, *with* ECF Nos. 203; 246; 261.

Plaintiff acknowledges as much, but argues certain facts against Defendant were excluded from the arbitration:

> The common nucleus in arbitration was the multiyear relationship between ZTE USA and the ClearTalk entities, but ZTE Corp. was only involved with the Missouri Agreement and subsequent dealings that flowed from that.  With ZTE Corp. out of arbitration, ClearTalk entities were not allowed to present any evidence or assert any arguments against ZTE Corp; evidence and facts that were distinctly different from that being offered against ZTE USA.

ECF No. 245 at 13.  While Plaintiff contends evidence presented in the current litigation against Defendant is "distinctly different" from that offered in the arbitration proceedings against ZTE USA, Plaintiff has failed to identify in its briefing or during oral argument a single fact relevant to the current litigation that was not presented during the arbitration.  *See* ECF Nos. 245; 246.

Rather, the ClearTalk entities jointly presented evidence during the arbitration proceedings without such a limitation as Plaintiff asserts was in effect. The arbitration record indicates that the ClearTalk entities consistently conflated Defendant and ZTE USA, their respective agents, and their arguments against the entities throughout the arbitration proceedings.  For instance, in their final

statement of claim, filed after the arbitrator limited the scope of the arbitration, the ClearTalk entities continued to assert claims against Defendant and ZTE USA collectively as "Respondents" or simply "ZTE." ECF No. 219-16 at 3. As such, ClearTalk asserted, for example, that "Respondents failed to timely repair or replace the equipment," that "Respondents sold equipment to Claimants they knew would not function properly in the United States," and that "ZTE promised to deliver certain equipment to [Plaintiff]" which did not work. 219-16 at ¶¶ 5, 6, 7.

Throughout the arbitration, the ClearTalk entities presented evidence of alleged acts and statements with no clear differentiation between acts and statements attributed to ZTE USA and to those attributable to Defendant. *See, e.g.*, ECF No. 219-17 at ¶¶ 77 ("Two individuals, Kushner and Joey Jia . . , were primarily responsible for ZTE Corp. and ZTE USA's efforts in courting Daredevil's business."), 78 (". . . Kushner and Jia made affirmative representations regarding ZTE Corp. and ZTE USA's ability to deliver equipment . . . ."); ECF No. 219-31 at 27 ("At this point, Mr. Kushner and Mr. Jia showed up uninvited at Mr. Steinmann's house and urged him vigorously to buy from ZTE rather than Huawei."), 28 ("ZTE had been so desperate to get the sale that they induced ClearTalk to enter into the contract with full knowledge that they could never meet the deadlines which they had committed to . . . .").

The ClearTalk entities were allowed to introduce a voluminous record of evidence encompassing facts relevant to both ZTE USA and Defendant.  Plaintiff fails to show any single fact that was excluded during arbitration which may be introduced against Defendant in this matter.  *Cf. McClain v. Apodaca*, 793 F.2d 1031, 1033–34 (9th Cir. 1986) ("McClain asserts that these are two completely separate claims for relief because 'there is no identity of facts essential to maintain the two suits.'  McClain does not, however, point out any such 'different facts' to this court.").  The Court concludes the current litigation encompasses the same nucleus of fact and substantially the same evidence as litigated during the arbitration process.

Plaintiff's argument against claim preclusion is predominately founded upon Plaintiff's assertion that it did not have a full and fair opportunity to litigate its claims, the only point Plaintiff pressed at oral argument.  Plaintiff argues that "[u]pon the Arbitrator's determination that the arbitration would not include any of NTCH-WA's claims against ZTE Corp., NTCH-WA was denied a full and fair opportunity to litigate its case against ZTE Corp."  ECF No. 245 at 3.  This argument, however, misses the mark.

Preclusion is inappropriate when a party is denied the opportunity to litigate a particular claim in a previous case or when some aspect of due process is missing.  *See Miller v. Cnty. of Santa Cruz*, 39 F.3d 1030, 1038 (9th Cir. 1994); *see*

*also Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 481 (1982) ("[S]tate proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law.").  In the arbitration at issue here, the parties were represented by counsel, participated in extensive discovery, provided the arbitrator with extensive briefing, made opening and closing arguments, and were permitted to examine and cross-examine witnesses and to present relevant evidence in a manner substantially akin to adjudicatory proceedings.  The proceedings themselves abided by the minimum requirements of due process and provided a full and fair opportunity to Plaintiff to litigate its claims.

More importantly, Plaintiff was not denied the opportunity to litigate the *issues* they present in the current case.  Plaintiffs here focus on three general allegations of wrongdoing:  misrepresentations about the functionality of Defendant's equipment, failure to deliver equipment, and failure to provide favorable pricing on cellular handsets.  *See* ECF No. 203 ¶¶ 68–117.  These issues were extensively litigated during the arbitration proceedings.

Plaintiff's argument focuses on the fact that the arbitrator limited the scope of arbitration to those claims against ZTE USA.  *See* ECF No. 219-15 at 2.  However, given the extensive evidence presented in the arbitration against both ZTE USA and Defendant, this ruling only had the effect of limiting liability during

the arbitration to ZTE USA.  In fact, the arbitration was undertaken as if both ZTE

USA and Defendant were liable for each of the ClearTalk entities' claims.

Plaintiff's pivot to focus on Defendant as the liable party now is unavailing.

Plaintiff's interpretation of the evidence in the current matter merely repaints the

wrongdoings the ClearTalk entities alleged against ZTE USA in arbitration as

wrongdoings Plaintiff now contends were committed by Defendant.  Because the

evidentiary proof in the litigation remained the same whether Defendant or ZTE

USA was ultimately the liable party, Plaintiff had a full and fair opportunity to

litigate its allegations of wrongdoing during the arbitration, regardless of whether

Defendant was an express party to those aspects of the litigation.  In the end, the

arbitrator found that there was an insufficient proof to demonstrate that any of the

ClearTalk entities were harmed by the alleged wrongdoing (whether the

wrongdoing is attributable to Defendant or to ZTE USA).

Ultimately, "[w]hat is at issue here is the preclusiveness of the judgment in

the previous action to the legal harm for which [Plaintiff] seeks redress in [its]

second action." *McClain*, 793 F.2d at 1034.  The legal harms the ClearTalk

entities litigated in the arbitration are the same legal harms that Plaintiff now

reasserts under slightly different legal theories and shading of fact.  Plaintiff

"cannot avoid the bar of res judicata merely by alleging conduct by the defendant

not alleged in his prior action or by pleading a new legal theory." *McClain*, 793

F.3d at 1034; *see also Tahoe- Sierra Preservation Council*, 322 F.3d at 1078

("Newly articulated claims based on the same nucleus of facts may still be subject

to a res judicata finding if the claims could have been brought in the earlier

action."). The Court concludes that the undisputed evidence clearly shows that all

current claims were or could have been raised during the arbitration proceedings

irrespective of whether Defendant was expressly liable for the wrongdoings.[11]

### ACCORDINGLY, IT IS SO ORDERED:

1. Defendant's Motion for Final Summary Judgment (ECF No. 218) is
   **GRANTED**.

---

[11]     Arguably, Plaintiff's sole claim of tortious interference with contract may

survive claim preclusion because litigation of that claim would have potentially

destroyed privity between ZTE USA and Defendant and would have required that

Defendant specifically be involved in the arbitration as a liable party. However,

the arbitrator necessarily determined that the ClearTalk entities were not damaged

by any alleged breach of contract. ECF No. 207-1 at 16; 219-28 at 17. Because a

tortious interference with contract claim requires proof of damages, *Commodore v.*

*Univ. Mech. Contractors, Inc.*, 120 Wash. 2d 120, 137 (1992), Plaintiff's current

claim fails as a matter of law pursuant to the doctrine of issue preclusion. *See*

*Allen*, 449 U.S. at 94; *Masson*, 85 F.3d at 1400; *Baldrige*, 827 F.2d at 1360.

2. Defendant's Motion for Final Summary Judgment on Additional Grounds (ECF No. 233) is **DENIED** as moot.

3. Defendant's Motions to Exclude Expert Testimony (ECF Nos. 231; 232; 236; 237; 239) are **DENIED** as moot.

The District Court Clerk is directed to enter this Order and provide copies to counsel, enter **JUDGMENT** for Defendants on all claims, and **CLOSE** the file.

**DATED** September 11, 2017.



THOMAS O. RICE
Chief United States District Judge